# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CODY JAMES LORENZ,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. SA-15-CA-999-FB** |
| | § | |
| **LORIE DAVIS,**[1] **Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Cody Lorenz's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket Entry 1), Respondent's Answer (Docket Entry 12), and Petitioner's Traverse (Docket Entry 17). Petitioner Lorenz has paid the applicable filing fee for this cause and is proceeding *pro se*.

In October 2012, Cody Lorenz entered an open plea of guilty to felony murder and was subsequently sentenced to fifty years. He now challenges the constitutionality of his state court conviction and sentence, arguing that his trial attorney was ineffective for failing to: (1) know the applicable law, which led to his involuntarily pleading guilty; (2) announce "not ready for trial" rather than request a continuance after the State modified the indictment on the day of trial; and (3) present mitigating evidence at the punishment phase of trial. Petitioner also argues that the trial court abused its discretion by: (1) denying his motion for new trial based on counsel's ineffectiveness; (2) denying counsel's request for a continuance; and (3) allowing the State to modify

---

[1] The previous named respondent in this action was William Stephens. On May 1, 2016, Lorie Davis succeeded William Stephens as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Davis is automatically substituted as a party.

the indictment which resulted in the loss of jurisdiction. Having reviewed the record and pleadings submitted by both parties, the Court concludes petitioner Lorenz is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. **Background**

On October 8, 2012, Cody Lorenz pleaded guilty in Guadalupe County to felony murder and, after a separate punishment proceeding, was sentenced to fifty years. *State v. Lorenz*, No. 12-0259-CR (Dist. Ct. of Guadalupe County, 25th Jud. Dist. Of Texas, Dec. 12, 2012). On direct appeal to the Fourth Court of Appeals, Mr. Lorenz argued his trial counsel was ineffective because: (1) counsel believed he could defend petitioner by arguing the State did not prove petitioner acted intentionally or knowingly, and (2) counsel believed he could obtain a ten-day continuance following the State's modification of the indictment. In affirming petitioner Lorenz's conviction, the Fourth Court of Appeals accurately described the procedural history leading up to the direct appeal proceedings:

> Lorenz ran a red light and struck a vehicle driven by Amber Rollins as she proceeded through an intersection. Rollins died as a result of the collision. After the incident, Lorenz's blood was drawn and it was determined he was intoxicated, having a blood alcohol level of .17—more than twice the legal limit. The parties stipulated to the blood alcohol level, and stipulated that Lorenz had two prior convictions for driving while intoxicated ("DWI").
>
> Lorenz was indicted for the offense of felony murder—the underlying felony was DWI. Although the State need not prove a particular mental state to obtain a conviction for murder committed in the course of committing felony DWI, *see Lomax v. State*, 233 S.W.3d 302, 304, 311 (Tex. Crim. App. 2007), Lorenz's indictment stated, in part, that Lorenz, "did then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life . . . and the defendant was then and there in the course of intentionally or knowingly committing a felony[.]"
>
> The case was called for jury trial. During pretrial hearing discussions, and before Lorenz was present in the courtroom, the trial court asked "if there was any

2

chance of a plea in this case."  Lorenz's trial counsel replied, "No, your Honor."  Almost immediately thereafter, the State moved to strike the portion of the indictment quoted above, arguing it was surplusage.  The trial court stated the matter would be determined once Lorenz was in the courtroom.  Lorenz's trial counsel stated he intended to object and would argue "that it's a fundamental right . . . my whole case was—was based on that."  At that time, Lorenz was brought to the courtroom.

Once Lorenz was in the courtroom, the trial court took up the State's motion to strike the mental state portions of the indictment.  The State argued that under the *Lomax* decision, the language was surplusage because the State was not required to prove a mental state in a felony murder case where the underlying felony is DWI.  Lorenz's trial counsel objected, stating "I object on the grounds it's a fundamental right of the Defendant.  In addition to that, it's not surplusage. This is a violation of his Constitutional rights."  The court overruled the objection and granted the State's motion.  The trial court interlineated the mental state language from the indictment and initialed the change.

At that point, having mentioned his intent to seek a continuance earlier in the proceedings in the event the State's motion was granted, Lorenz's counsel urged a motion for continuance, and in support called Lorenz to the stand.  Lorenz testified he and his trial attorney spent a significant amount of time discussing the importance of the "intentionally or knowingly" language that was included in the indictment.  Lorenz testified that neither he nor his attorney knew the State was going to file a motion to delete the mental state language from the indictment.  Lorenz further stated their entire case was premised on the existence of the mental state language in the indictment.  According to Lorenz, given the trial court's decision to grant the State's motion to strike that language, he needed time to discuss the case with his attorney so he could "intelligently and voluntarily" make decisions about how to proceed, specifically about whether to plead guilty.

The trial court denied the motion for continuance, but granted Lorenz and his counsel one hour and twenty minutes to confer about the case.  After they conferred, they re-entered the courtroom.  The record establishes Lorenz was called to the stand, apparently having decided to enter a plea of guilt.  The trial court first asked Lorenz if he had "been over that indictment" with his attorney.  Lorenz stated he had.  The trial court then asked Lorenz if he understood the charges against him, to which Lorenz replied that he did.  The trial court explained the range of punishment.  The trial court thereafter admonished Lorenz about his rights—right to a jury trial, cross-examine witnesses, introduce evidence, etc.  Lorenz stated he understood that if he pled guilty, he would give up those rights.  Lorenz admitted he and his attorney had reviewed the "Waiver, Stipulations and Admonishments," and that he understood it before he signed it.  Lorenz stated he had enough time to discuss the case with his attorney and review all the necessary paperwork.  Lorenz further stated he was

satisfied with his attorney's representation of him and that no one had forced him to plead guilty. Lorenz testified he was entering a plea of guilty because he committed the crime he was pleading to. Lorenz then entered an open plea of guilty to the offense of felony murder.

Having entered an open plea and elected to have the trial court assess punishment, a punishment hearing was subsequently held. At the hearing, the State asked the trial court to incarcerate Lorenz for life. Lorenz asked for a lesser sentence, though he did not request a specific number of years. The trial court assessed punishment at fifty years' confinement.

Thereafter, Lorenz filed a motion for new trial in which he argued the trial court erred in granting the State's motion to remove the mental state language from the indictment and in denying his motion for continuance. Lorenz claimed these errors resulted in an involuntary plea given the short time he was given to confer with trial counsel. He also asserted his trial counsel was ineffective, testifying he did not understand the effect of the trial court's decision to strike portions of the indictment or how it would affect any trial strategy. Lorenz also claimed he did not understand his decision to plead guilty, and asserted he was taking a narcotic medication on the day of his plea, which may have affected his ability to understand what was happening. Lorenz testified: (1) his attorney did not effectively explain the case to him, (2) he did not understand the difference between murder and felony murder, (3) and he did not fully understand his possible defense, particularly after the trial court granted the State's motion to remove the mental state language from the indictment.

However, on cross-examination, Lorenz admitted he had pled guilty on four other occasions and that in those cases his attorneys explained the terms of the plea agreement and accompanying paperwork. He also admitted that he read the "Waiver, Stipulation and Admonishments," discussed the terms with his attorney, and that he swore in court he understood the document.

*Lorenz v. State*, 2014 WL 2601717, No. 4-13-85-CR (Tex. App.—San Antonio, June 11, 2014, pet. ref'd).

On October 1, 2014, the Texas Court of Criminal Appeals refused petitioner Lorenz's petition for discretionary review. *Lorenz v. State*, No. 0879-14 (Tex. Crim. App. Oct. 1, 2014). A week later, Mr. Lorenz filed his first state habeas corpus application. It was dismissed by the Court of Criminal Appeals because the mandate had not issued at the time the application was filed. *Ex parte Lorenz*, No. 82,373-01 (Tex. Crim. App. Dec. 17, 2014). His second state habeas corpus

application, filed January 5, 2015, was denied without written order on April 29, 2015.  *Ex parte Lorenz*, No. 82,373-02 (Tex. Crim. App. Jan. 5, 2015).  The instant federal habeas petition was placed in the prison mail system on November 5, 2015, and file-marked on November 9, 2015.

## II.  Standards of Review

### A.    Review of State Court Adjudications

Cody Lorenz's federal petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous.  *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself.  *Richter*, 562 U.S. at 102.  Instead, a petitioner must show that the decision was objectively unreasonable, which is a

"substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner Lorenz must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

Furthermore, except for the narrow exceptions contained in § 2254(e)(2), a habeas petitioner is precluded from further factual development in federal court and must rely on the evidence presented to the state court when challenging a state court finding. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id*. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review" and this Court's review "is limited to the record in existence at the time [of the state court decision], i.e., the record before the state court." *Id*.

**B.    Review of Sixth Amendment Claims**

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) under the familiar two-prong test established in *Strickland v.*

*Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  *Strickland*, 466 U.S. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

In determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.  *Strickland,* 466 U.S. at 687-89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 690).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003).  As the Supreme Court explained, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."  *Richter*, 562 U.S. at 110.  For this reason, every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted).  Accordingly, there is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance."  *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because this showing of prejudice must be "rather appreciable," a mere allegation of prejudice or the possibility of a different outcome is not sufficient to satisfy the prejudice prong of *Strickland*. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). As the Supreme Court explained: "[T]he question in conducting *Strickland*'s prejudice analysis is *not* whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel [had] acted differently." *Richter*, 562 U.S. at 111 (emphasis added) (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009)). Rather, the "likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, this Court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Pinholster*, 563 U.S. at 190); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (same). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards, but whether "the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S 86, 101 (2011). That is to say, the question to be asked in this case is not

whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

### III. <u>Analysis</u>

### A.   <u>IATC Claims Challenging the Guilty Plea</u>

Petitioner Lorenz was convicted of felony murder after entering a guilty plea before the trial court. He now challenges his conviction, arguing the ineffective assistance of his trial counsel, Veryl Brown, rendered his guilty plea involuntarily. Specifically, he contends that trial counsel Brown failed to: (1) know the applicable law and erroneously believed he could base his defense on the State's inability to prove petitioner Lorenz acted intentionally or knowingly, and (2) announce "not ready for trial" rather than request a continuance after the State modified the indictment. As discussed below, however, the record does not support petitioner's claim that his guilty plea was involuntary, and he fails to demonstrate counsel's performance was either deficient or he was prejudiced by any alleged deficiency. Moreover, each of these allegations was rejected by the state court either on direct review or during Mr. Lorenz's state habeas proceedings. Because the state court's merits adjudication was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, federal habeas relief is unavailable. *Richter*, 562 U.S. at 101.

A voluntary guilty plea waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 265 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013); *United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008). This includes errors of constitutional dimension. *United States v. Broce*, 488 U.S. 563, 573-74 (1989). Thus, the only claims that survive a guilty plea are those implicating the validity of the plea itself. *Tollett*, 411 U.S. at 267; *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).

A guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000).   A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted).   And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion.   *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).   The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.   *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012).

The record in this case indicates petitioner Lorenz's plea was a voluntary and intelligent choice.   Mr. Lorenz signed a written "Waiver, Stipulations and Admonishments" agreement (Docket Entry 11-22 at 67-71) stating he waived his constitutional rights associated with a trial freely and voluntarily and he understood the consequences of his waiver.   He was also called to the stand and admonished by the trial court about the range of punishment he was facing and the rights he was giving up by pleading guilty.   (Docket Entry 11-5 at 19-22).   Petitioner Lorenz stated he understood. He also stated he had enough time to review the plea agreement with his attorney, Veryl Brown, and that he understood the document before he signed it.   He further stated he was satisfied with Mr. Brown's representation of him and no one had forced him to plead guilty.   Petitioner Lorenz testified he was entering a plea of guilty because he did, in fact, commit the crime to which he was pleading. After being fully admonished, petitioner Lorenz entered a plea of guilty to the offense of felony murder.

10

Any documents signed by the defendant at the time of the guilty plea are entitled to "great evidentiary weight." *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994); *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).  Petitioner  Lorenz's signature on the guilty plea documents is prima facie proof of the validity of the plea. *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994).  Furthermore, petitioner Lorenz's formal declarations in open court during his plea proceedings carry a strong presumption of verity and constitute a formidable barrier to any subsequent collateral attack. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014).  "The subsequent presentation of conclusory allegations which are unsupported by specifics is subject to summary dismissal." *Blackledge*, 431 U.S. at 74.  Petitioner Lorenz has not provided any evidence or argument that would overcome this strong presumption.

Nor has petitioner established that his counsel rendered ineffective assistance and counsel's actions compelled him to plead guilty.  The appropriate standard to evaluate the effectiveness of counsel with regard to a guilty plea is the familiar *Strickland* two-part test.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (citing *Strickland*, 466 U.S. at 668).  Again, the petitioner must first show his counsel's performance fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688–89.  But, in the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S at 59.  This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d at 206 (citations omitted).  This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*.

11

Petitioner Lorenz first asserts that attorney Veryl Brown was ineffective because Mr. Brown erroneously believed he could defend a felony-murder case by arguing lack of *mens rea* despite the fact that the law in Texas states no proof of a mental state is necessary when the underlying felony is DWI. *See Lomax v. State*, 233 S.W.3d 302, 304 (Tex. Crim. App. 2007). Yet, there is nothing in the record to suggest Mr. Brown believed that a lack of evidence of a mental state was required. In fact, it suggests the opposite. When questioned by the trial court whether he believed a culpable mental state was required for conviction, Mr. Brown responded, "No Judge," and explained his objection was to the State abandoning the surplus language regarding mental state in the indictment. (Docket Entry 11-5 at 11). Similarly, there is nothing to indicate Mr. Brown intended to defend the petitioner by arguing the lack of evidence concerning a mental state. Although he indicated to the Court that his "whole case was—was based on that," attorney Brown was referring to a strategy of attacking the *mens rea* defect in the indictment—the variance between the indictment and the offense charged—and not that the State failed to establish a mental state. Petitioner's first IATC claim therefore lacks merit.

In his second IATC claim, petitioner Lorenz asserts Veryl Brown erroneously sought a ten-day continuance instead of announcing "not ready" after the State abandoned the *mens rea* language just prior to his trial. According to Mr. Lorenz, counsel incorrectly believed he was entitled to the continuance under article 28.10, which allows a defendant up to ten days to respond to an *amendment* of the indictment. *See* Tex. Code Crim. Proc. art. 28.10(a). But petitioner fails to explain the significance between announcing "not ready" and seeking a continuance, much less demonstrate that the trial court would have given him extra time to consider a plea had counsel used a different term. Moreover, the record belies Mr. Lorenz's assertion that attorney Brown believed

12

he was entitled to a continuance under art. 28.10.  During argument on counsel's motion for new trial, Mr. Brown stated (correctly) that art. 28.10 does not require a continuance in this case because the State did not amend the indictment, but rather abandoned unnecessary surplusage.  (Docket Entry 11-7 at 15); *see Eastep v. State*, 941 S.W.2d 130 (Tex. Crim. App. 1997) (holding "abandonment" of surplusage in indictment is not "amendment" for purposes of art. 28.10).  Counsel was instead seeking the continuance because he thought it was necessary to have additional time with his client to discuss the State's abandonment and whether it would affect his decision to plead guilty.  Thus, petitioner Lorenz's second IATC also lacks merit.

Regardless, even assuming counsel was deficient for one of these two reasons, the petitioner still cannot show he would not have pleaded guilty and would have instead insisted on going to trial but for counsel's error.  *Armstead*, 37 F.3d at 206.  Again, such an assessment will turn partially on "a prediction of what the outcome of a trial might have been."  *Id.*  The record is silent as to whether the petitioner would have made the decision to plead not guilty and go to trial had a continuance been granted or had counsel chosen a different pre-trial strategy other than to attack the defect in the indictment.  However, prior to the State moving to abandon the surplusage language in the indictment, petitioner Lorenz had already stipulated to two prior judgments for DWI and that his blood-alcohol level was .17—over twice the legal limit.  (Docket Entry 11-5 at 7).  Following the State's motion, the petitioner and his counsel Veryl Brown were given over an hour to confer about the decision, which resulted in Mr. Lorenz stating on the record that he was voluntarily pleading guilty because he had, in fact, committed the crime with which he was charged.  Mr. Lorenz also affirmatively stated he was satisfied with counsel's performance and he understood the rights he was

waiving.  Thus, based on the record before the Court, it appears unlikely the petitioner would have chosen to go trial.

In light of the record evidence supporting the voluntariness of his guilty plea, in addition to the fact petitioner Lorenz failed to prove counsel's performance was deficient or his plea was involuntary due to ineffective assistance of counsel, this Court must find that the petitioner entered into his plea voluntarily, knowingly, and intelligently.  Moreover, Mr. Lorenz completely failed to prove that, but for his attorney's actions, he would have chosen to proceed to trial.  Mr. Lorenz's conclusory allegations are insufficient to raise a constitutional claim on federal habeas corpus review.  *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).  Lorenz has therefore failed to establish a claim of ineffective assistance of counsel. *Hill*, 474 U.S. at 58.  Accordingly, federal habeas relief must be denied because petitioner fails to meet his burden of proof under the AEDPA.  28 U.S.C. § 2254(d).

**B.    Trial Court Error Claims**

In several related allegations, petitioner Lorenz also contends the trial court committed error by (1) denying his motion for new trial based on counsel's ineffectiveness prior to the guilty plea; (2) denying counsel a continuance following the interlineation of the indictment; and (3) allowing the State to amend the indictment.  To the extent they are not waived by petitioner's voluntarily plea of guilty, however, relief on the claims is unavailable.  Mr. Lorenz fails to demonstrate the state court's rejection of the claims was contrary to, or an unreasonable application of, Supreme Court precedent.

To start, it appears as though the petitioner is arguing the state court erred in applying the state laws that concern the grant or denial of the motion to abandon, motion for continuance, and

14

motion for new trial that were before the trial court.  Such claims are not cognizable in a federal habeas corpus proceeding, and this Court must defer to the state court determination of Texas law. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (stating that the Court has repeatedly held that "federal habeas corpus relief does not lie for errors of state law.") (citations omitted); *Fuller v. Johnson*, 158 F.3d 903, 908 (5th Cir. 1998) (failure to follow Texas law is not reviewable). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law.") (internal citation and quotation marks omitted). Therefore, even if the state courts in fact misapplied state law, it would have no impact on this proceeding.  Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119 (1983).

Further, it is clear by the discussion in the previous section that the trial court committed no error, and even if it had, Mr. Lorenz still would not be entitled to relief because any error was harmless.  The Supreme Court has held that the test for harmless error on federal habeas review is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  With regard to the motion for new trial, petitioner Lorenz failed to establish either his counsel performed deficiently or he was prejudiced by this performance as required under *Strickland*; thus, the trial court was given no reason to grant Mr. Lorenz a new trial.  Similarly, with regard to

15

the motion for a continuance, petitioner failed to establish he was entitled to a continuance or the results of the proceedings would have been different had one been granted. Finally, it is clear the trial court did not err in allowing an "amendment" to the indictment—the court simply allowed the State to abandon surplusage language. *See Eastep v. State*, 941 S.W.2d at 130 (explaining "abandonment" is not an "amendment."). Thus, because the substance of the indictment was not altered, the trial court did not lose jurisdiction as the petitioner now contends. *See Ji Chen v. State*, 410 S.W.3d 394, 396 (Tex. App.—Houston July 30, 2013, pet. ref'd) (discussing difference between "amendment" and "abandonment.").

## C.   IATC Claim Challenging His Sentence

Petitioner Lorenz also raises an allegation claiming trial counsel provided ineffective assistance at the subsequent punishment phase by failing to present mitigating evidence. According to Mr. Lorenz, two investigators hired by counsel had knowledge of favorable evidence but were told by counsel to wait to investigate further. This evidence appears to be witnesses who were with Mr. Lorenz on the day of the accident that could have testified on his behalf. As discussed below, however, the petitioner fails to demonstrate how the state court's rejection of this claim was either contrary to, or an unreasonable application of, the *Strickland* standard. This Court will therefore deny federal habeas relief. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (noting that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch*, 907 F.2d at 530 (same). Petitioner Lorenz's unsubstantiated and conclusory allegations

16

concerning allegedly favorable witnesses that counsel should have discovered is insufficient to prove that counsel acted deficiently. *Kinnamon v. Scott*, 40 F.3d 731, 734-35 (5th Cir. 1994) (finding "speculation" of ineffective assistance to be no basis for habeas relief); *Barnard v. Collins*, 958 F.2d 634, 643 n.11 (5th Cir. 1992) (holding that "conclusory allegations" of ineffective assistance are without merit "[i]n the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial").

Petitioner fails to establish who these witnesses were, much less demonstrate they were available or explain how their testimony would have been beneficial to him at punishment. With regard to claims of uncalled witnesses, the Fifth Circuit has noted that such claims are not favored on federal habeas review because allegations of how a witness would have testified are largely speculative. *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986). Thus, in order to demonstrate prejudice, a petitioner must show not only that the testimony of the witness would have been favorable, but also that the witness would have testified at trial as he asserts. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Mr. Lorenz fails to demonstrate either in this case. As such, he cannot establish counsel was either deficient or he was prejudiced from this deficiency, and relief is foreclosed under the "doubly deferential" standards of *Strickland* and Section 2254(d). *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

## IV.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects

a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El,* 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that petitioner Lorenz failed to state a valid claim for relief.  As such, a COA will not issue.

## V.  Conclusion

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his direct appeal and state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings.  As a result, Mr. Lorenz's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Federal habeas corpus relief is DENIED and Cody James Lorenz's Petition for a Wirt of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket Entry 1) is DISMISSED WITH PREJUDICE;

2.  No Certificate of Appealability shall issue in this case; and

18

3.  Motions pending, if any, are also DISMISSED, and this case is now CLOSED.

It is so ORDERED.

SIGNED this 28th day of February, 2017.

FRED BIERY
UNITED STATES DISTRICT JUDGE

19